# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| STEPHEN SATELL | : | CIVIL ACTION |
| --- | --- | --- |
|  | : |  |
|  | : | NO. 17-2774 |
| v. | : |  |
|  | : |  |
| TEMPLE UNIVERSITY | : |  |
|  | : |  |

**KEARNEY, J.**                                                                                                  **January 3, 2018**

## MEMORANDUM

A Caucasian doctoral student challenging a university's decision to reduce his grade based on alleged plagiarism which caused his removal from the university's doctoral program must pursue the university's internal grievance procedures before claiming it deprived him of due process. He must also timely seek redress for claims the university discriminated against him because of his Caucasian race. When, as here, the graduate student did not pursue the university's internal remedies to challenge his grade reduction based on plagiarism and otherwise raises race discrimination claims based on statements or actions made well over two years before filing his case, we cannot find a genuine issue of material fact on the federal law questions precluding the university's motion for summary judgment. While the *pro se* former student cites a litany of disputed facts and misunderstandings to show why he should have remained in the doctoral program and the university acted unfairly towards him, our limited constitutional role does not extend to evaluating student effort or second guessing educational policy decisions so long as the university complies with federal law, including affording due process and not discriminating against the student based on race or another identified characteristic. As there are no genuine issues of material fact addressing these federal law questions, we enter the accompanying Order granting the university's motion for summary judgment.

I.   **Facts adduced in discovery in the light most favorable to Mr. Satell.**

  A.   **Mr. Satell's pre-doctoral career in the University's graduate programs.**

Stephen Satell, a white man, enrolled in Temple University's Urban Education program seeking a Master's degree in the Fall Semester 2011.[1] He then applied to the University's Urban Education doctoral program. The University denied admission to the Urban Education doctoral program.[2] In August 2012, the University awarded Mr. Satell a Master's degree in Urban Education.[3]

Mr. Satell then applied to the University's Education Psychology doctoral program and the University denied his admission.[4] In Fall 2013 semester, Mr. Satell remained at the University as an undeclared continuing studies student enrolled in three courses in the University's Africology and African American Studies program.[5] In one of those three courses, Mr. Satell used the "n-word" when quoting James Baldwin in a class presentation.[6] Someone told him "never say that again" and then another student got up, left class, and then came back and told the other students to leave.[7] Mr. Satell reported this incident to the University President, Dr. Neil D. Theoobald, and the director of the Africology and African American Studies program, Dr. Molefi Asante.[8] Mr. Satell also told them he contacted an attorney about this incident "to make sure my rights are protected."[9]

Mr. Satell also took part in a Kwanzaa celebration with the Africology and African American Studies program as the only Caucasian participant. "[O]ne student and one professor would not participate with him" in the Kwanzaa celebration.[10] A friend of Mr. Satell then placed him in contact with a law firm but Mr. Satell did not contact the law firm. He also told Dr. Asante of the incident and Dr. Asante assured Mr. Satell he would protect him from this conduct.[11]

2

B.  **Mr. Satell's work in the doctoral program.**

In November 2013, Mr. Satell applied to the Africology and African American Studies doctoral program and the University admitted him.[12] In Fall 2014 semester, Mr. Satell enrolled as a doctoral student in Africology and African American Studies program.[13] Mr. Satell was the only Caucasian in the doctoral program.[14]

The University's policies for the doctoral program mandate if a student receives "more than two grades below B- or more than one F constitutes grounds for academic dismissal. Students receiving two grades below B- or more than one F are automatically removed from the graduate programs."[15] The University also had a grade appeal grievance process for doctoral students which require the student first address the grade with "the faculty or staff concerned," and if the issue is not resolved, the student should then consult the Graduate Director as a confidential intermediary.[16] If the student's grade issue is still not resolved, the student must then submit a written appeal to the Graduate Director who must appoint a committee to hear the student's appeal.[17] The committee makes a decision. The student can then appeal the committee's decision to the College of Liberal Arts, and in extraordinary circumstances, appeal to the Graduate School Dean.[18]

*Fall 2014 semester*

In Fall 2014, Mr. Satell enrolled in three courses: African Civilizations, Research Methods for African American Studies, and Theories and Methods in African American Studies and earned an A, B, and B- for his grades respectively.[19] In Mr. Satell's Theories and Methods in African American Studies course, Professor Dr. Ama Mazama told her class, including Mr. Satell, Afrocentricity "is about essence, meaning skin color, race which it predetermined" which meant Mr. Satell is excluded because he is Caucasian.[20] Mr. Satell never discussed the meaning

3

of this statement with Dr. Mazama.[21] Dr. Mazama also offered her students materials if they chose to do a presentation on Diop, a figure in Africology, but when Mr. Satell selected Diop for his presentation topic, Dr. Mazama did not give him the materials.[22] Mr Satell is not aware if Dr. Mazama provided the Diop materials to other students.[23] Mr. Satell reported Dr. Mazama's comment and her Afrocentricity "is about essence" statement in a letter to Dr. Asante.[24]

Dr. Mazama awarded Mr. Satell a C in her African American Africology class.[25] Mr. Satell requested a grade change based on Dr. Mazama's e-mails promising to change his grade and as a result, Dr. Mazama changed his grade to a B-.[26]

### *Spring 2015 semester*

In Spring 2015, Mr. Satell enrolled in three courses, African Aesthetics, Ancient Egyptian Language I, and Teaching African-American Studies earning an A-, B-, and a C- respectively.[27]

Mr. Satell attended "Teaching African-American Studies" taught by Dr. Nilgun Anadolu-Okur, a Caucasian woman.[28] Dr. Okur treated Mr. Satell, the only Caucasian, differently from the other four students in the class when she denied his requests for an appointment for office hours.[29] Dr. Okur allowed other students to make appointments for office hours.[30] Dr. Okur gave him less time to present than other students on his first and second presentations, forced him to give his third presentation outside class time, and interrupted him during his presentation.[31] Dr. Okur also approved his paper topic, and then forced him to change his paper topic before he had to give a presentation about his paper, and two weeks before his final paper on that topic was due.[32] Mr. Satell compiled and changed his paper topic but Dr. Okur still falsely reported he refused to change his paper topic to the director of the program, Dr.

4

Molefi Asante.[33] Dr. Okur also required an African American student to redo his presentation, then Dr. Okur forgot and the student never redid his presentation.[34]

Mr. Satell found Dr. Okur had "erratic behavior across the board" towards students but only "grandstand[ed] on him" as the only Caucasian.[35] Mr. Satell believes Dr. Okur did this to "humiliate [him] in front of the class and consistently treated [him] differently than the other class members in a very public way."[36]

After Dr. Okur awarded him a C- in her class, Mr. Satell contacted Dr. Asante because of his concern the doctoral program would automatically dismiss him if he received a second grade below a B-.[37] Dr. Asante directed Mr. Satell to speak with the Graduate Director for the program, Dr. Mazama.[38] Dr. Mazama told Mr. Satell she contacted Dr. Okur several times but received no response.[39] Mr. Satell then grieved his grade from Dr. Okur to the University's Vice Dean of Graduate Affairs for the College of Liberal Arts.[40] During the review, Mr. Satell spoke with a student ombudsperson and raised issues of "the possible role of racial basis" in his grade.[41] The College of Liberal Arts graduate committee denied Mr. Satell's grade appeal and his grade remained a C-.[42] The committee also directed Mr. Satell to contact the University's Office of Equal Opportunity Compliance about his racial basis concerns.[43] Mr. Satell never contacted the office about his racial basis concerns.[44]

Because Mr. Satell's grade remained a C-, under the University's doctoral policies, if Mr. Satell received one more grade under a B-, the University would automatically dismiss him from the program.[45]

*Fall 2015 semester*

In Fall 2015, Mr. Satell enrolled in two courses: Readings in African History and Critical Reading: African Diaspora earning a B- and A-.[46]

5

In Mr. Satell's Readings in African History class taught by Dr. Asante, a guest speaker suggested Mr. Satell take a group photograph because Mr. Satell is a different race than everyone else.[47] Dr. Asante told the guest speaker, "that's terrible, he puts up with enough stuff in the department."[48]

### *Spring 2016 semester*

In Spring 2016, Mr. Satell enrolled in four courses: Independent Study, Individual Research in African American Studies, History of the American Presidency, and Recent U.S. history receiving a B, C, A, and B respectively.[49]

In Mr. Satell's Independent Studies course taught by Dr. Aaron Smith, he submitted a paper for this independent studies course and Dr. Smith initially gave him A.[50] Dr. Smith then identified three passages where Mr. Satell plagiarized without attribution.[51]

On May 16, 2016, Dr. Asante told Mr. Satell he changed his independent studies course grade from an A to a C- because Mr. Satell failed to properly cite sources at least three times.[52] Dr. Asante explained Mr. Satell, "received a C because of the sourcing problem."[53] Dr. Asante's notice was the first notice Mr. Satell received about issues with his final paper.[54] Dr. Asante also notified Mr. Satell of his right to seek review of this grade change through the grievance process.[55]

Mr. Satell received two grades below a B- and the University would now automatically dismiss him from the doctoral program. Attempting to remain in the program, Mr. Satell asked Dr. Asante to ask Dr. Okur if she would she raise his C- in Teaching African-American Studies to a B-.[56] Dr. Okur refused because Mr. Satell actually received an F in her class but already

raised his grade to a C- and refused to raise it any higher citing the committee's denial of Mr. Satell's grievance.[57]

Mr. Satell then e-mailed Dr. Asante about the plagiarized paper for Dr. Smith and also complained again about Dr. Okur and Dr. Mazama.[58] In his e-mail to Dr. Asante, Mr. Satell also included a draft of his letter to Dr. Smith.[59] Mr. Satell describes the plagiarism as a misunderstanding because he did not finish the draft.[60]

Consistent with its policies, the University removed Mr. Satell from the doctoral program based on his two grades below a B-. Mr. Satell never grieved his grade in Dr. Smith's Independent Studies course.[61] Mr. Satell is not aware of any non-Caucasian students in his program who committed or were accused of plagiarism and were not disciplined.[62]

## II. Analysis

Mr. Satell sued the University alleging it violated the Fourteenth Amendment by dismissing him from a doctoral program without notice and due process. Mr. Satell also alleged the University violated Title VI by discriminating against him on the basis of race. The University moves for summary judgment on the due process claim arguing it offered constitutionally sufficient process but Mr. Satell failed to use the process.[63] The University also moves for summary judgment on Mr. Satell's Title VI claim because he fails to adduce evidence of intentional discrimination, and even if he had, the two year statute of limitations ran on his claims.

### A. Mr. Satell fails to adduce evidence the University deprived him of due process.

Mr. Satell alleges the University deprived him of due process because Dr. Asante told him of his grade change after the grade already changed, not before and failed to provide an adequate opportunity to be heard.

7

The Fourteenth Amendment right "is implicated when a student in a school run by a state faces *non de minimis* sanctions imposed by the school."[64] Our court of appeals instructs when a school dismisses a student for academic reasons, "an informal faculty evaluation with a student is all that is required" to satisfy due process.[65] The Supreme Court distinguished this informal evaluation from the more stringent level of due process required for students charged with disciplinary infractions where formal notice and a hearing are required.[66]

While the Fourteenth Amendment requires the University give Mr. Satell an informal faculty evaluation, it also requires Mr. Satell take advantage of the University's procedures because his "due process violation 'is not complete when the deprivation occurs, it is not complete unless and until [the University] fails to provide due process."[67]

The University told Mr. Satell his professor changed his Independent Studies paper grade from an A to a C- and the reasons for the change. The University also notified Mr. Satell of his right to seek review of this grade change through the grievance process.[68] Mr. Satell elected not grieve his grade using the University's procedures, even though he knew about the procedure having grieved his grade from Dr. Okur.[69]

Mr. Satell argues the University violated his rights by giving him notice after, not before, it changed his grade. Mr. Satell does not have a constitutional right to notice before the University changes his grade. The Fourteenth Amendment does not require formal notice before academic dismissal; it only requires an informal faculty evaluation for due process.[70]

There is no dispute of material fact as, viewing the evidence in the light most favorable to Mr. Satell, the University provided Mr. Satell with due process when it told him his professor changed his grade, the reasons for the change, and offered him the opportunity to change the grade. Mr. Satell, however, elected not take advantage of the University's offered due process.

8

He is now estopped from alleging the University "failed to provide due process." [71] We grant summary judgment for the University on Mr. Satell's due process claim.

### B. The statute of limitations bars Mr. Satell's Title VI claim.

Mr. Satell alleges the University discriminated against him as the only Caucasian in the Africology and African Americans Studies courses.

To prove a Title VI violation, Mr. Satell must adduce (1) he is a member of a protected class; (2) he was qualified to continue in pursuit of his education; (3) he suffered an adverse action; and "(4) such action occurred under circumstances giving rise to an inference of discrimination."[72] Mr. Satell must adduce evidence the University "engaged in intentional discrimination."[73] Mr. Satell may adduce evidence of intentional discrimination "with evidence demonstrating either discriminatory animus or deliberate indifference."[74] Mr. Satell must bring his Title VI claim within two years when his cause of action accrued when he suffered intentional discrimination based on his race.[75]

Mr. Satell sued the University on May 5, 2017 which means the two-year statute of limitations bars all of his claims before May 5, 2015. Two of Mr. Satell's allegations of intentional discrimination happened in Fall 2013, when students walked out of Mr. Satell's presentation because he used the "n-word" and when a student and professor refused to participate in the Kwanzaa celebration with him. [76] Mr. Satell also believed he suffered intentional discrimination at the time because in both instances he either contacted or threatened to contact an attorney about this incident "to make sure my rights are protected."[77] The statute of limitations bars Mr. Satell's Title VI claim based on these incidents because, at the time, Mr. Satell believed he suffered intentional discrimination enough to contemplate legal representation but did not sue.

9

Mr. Satell's next allegation of intentional discrimination occurred in Fall 2014 when Dr. Dr. Mazama told her class, including Mr. Satell, Afrocentricity "is about essence, meaning skin color, race which it predetermined" which meant Mr. Satell is excluded because he is Caucasian.[78] At the time, Mr. Satell reported Dr. Mazama's comment and her Afrocentricity "is about essence" statement in a letter to Dr. Asante but did not pursue a formal complaint with the University or the federal courts.[79] The statute of limitations bars Mr. Satell's Title VI claim based on this incident because, at the time, Mr. Satell believed he suffered intentional discrimination and told Dr. Asante about the incidents but choose not to pursue legal remedies.

Mr. Satell's last allegation of intentional discrimination occurred during the Spring 2015 semester which ended on May 1, 2015.[80] Mr. Satell alleges Dr. Okur discriminated against him as the only Caucasian, by denying his requests for an appointment during office hours. Dr. Okur allowed other students to make appointments to meet during office hours, giving him less time to present than other students on his first and second presentations, forced him to give his third presentation outside class time, and interrupted him during his presentation.[81] Mr. Satell also alleges Dr. Okur also approved his paper topic and then forced him to change his paper topic a week before he had to present on the topic and two weeks before the final paper's due date. He then falsely reported he refused to change his paper topic to the director of the program, Dr. Molefi Asante.[82] Mr. Satell believes Dr. Okur "grandstand[ed] on him" as the only Caucasian to "humiliate [him] in front of the class and consistently treated [him] differently than the other class members in a very public way."[83] While we do not know when Mr. Satell's allegations happened over the course of semester, we know the semester ended on May 1, 2015, outside the statute of limitations. We also know within the statute of limitations, Mr. Satell raised issues of "the possible role of racial basis" in his grade and the University directed Mr. Satell to contact its

10

Office of Equal Opportunity Compliance to address his racial basis concerns.[84] Mr. Satell never contacted the University's office about his racial basis concerns. Mr. Satell also did not pursue legal process.[85] The statute of limitations bars Mr. Satell's claims of intentional discrimination based Dr. Okur's conduct in spring semester 2015.

Mr. Satell argues the statute of limitations does not bar his Title VI claim because his cause of action did not accrue until he "saw the racial analysis provided in discovery which showed that all four American Americans accused of plagiarism all received probation."[86] Mr. Satell's argument is incorrect on two grounds. In his May 2017 complaint, Mr. Satell alleged the University discriminated against him based on his race so it is logically impossible his Title VI claim accrued during discovery for his Title VI claim. Mr. Satell also alleges incidents of direct intentional discrimination because at the time they happened he threatened contact or actually contacted attorneys about his rights. Mr. Satell cannot now argue he did not know these incidents constituted discrimination until he saw a document during discovery.

We grant summary judgment for the University on Mr. Satell's Title VI claims because the two-year statute of limitations bars his known allegations of intentional discrimination.

## III. Conclusion

We grant summary judgment for the University on Mr. Satell's due process claim because the University offered Mr. Satell constitutionally sufficient due process but he elected not to take advantage of the offered due process. We also grant summary judgment dismissing Mr. Satell's Title VI claims because the two-year statute of limitations bars alleged incidents of intentional discrimination which occurred more than two years ago.

11

[1] Appendix ("Appx.") 61a (hereafter "61".) We consider the "underlying facts and all reasonable inferences therefrom in the light most favorable to" Mr. Satell, "the party opposing the motion." *Slagle v. Cnty. of Clarion*, 435 F.3d 262, 264 (3d Cir. 2006) (citations omitted). Our Policies require a Statement of Undisputed Material Facts be filed in support of a Rule 56 motion, as well as an appendix of exhibits. The University filed its Statement of Undisputed Material Facts and Appendix at ECF Doc. Nos. 33-34. Mr. Satell filed a sur-reply responding to the University's Statement of Undisputed Facts and also filed an Appendix at ECF Doc. Nos. 36-37.

[2] Appx. 3a.

[3] Appx. 3a.

[4] Appx. 4a.

[5] Appx. 61a.

[6] Appx. 72a.

[7] Appx. 77a.

[8] Appx. 70a.

[9] Appx. 72a.

[10] Appx. 21a, 23a.

[11] Appx. 398a.

[12] Appx. 4a.

[13] Appx. 18a.

[14] Appx. 24a.

[15] Appx. 4a-5a.

[16] Appx. 5a.

[17] Appx. 5a.

[18] Appx. 5a.

[19] Appx. 5a-6a.

[20] Appx. 22a.

[21] Appx. 26a.

[22] Appx. 21a.

[23] Appx. 25a.

[24] Appx. 27a.

[25] Appx. 27a.

[26] Appx. 27a-28a.

[27] Appx. 6a.

[28] Appx. 6a.

[29] Appx. 20a, 29a.

[30] Appx. 32a.

[31] Appx. 20a, 41a-42a.

[32] Appx. 20a.

[33] Appx. 20a.

[34] Appx. 30a.

[35] Appx. 43.

[36] Appx. 34a.

[37] Appx. 46a.

[38] Appx. 46a.

[39] Appx. 162a.

[40] Appx. 7a.

[41] Appx. 212a.

[42] Appx. 7a.

⁴³ Appx. 212a.

⁴⁴ Appx. 7a.

⁴⁵ Appx. 4a-5a.

⁴⁶ Appx. 6a.

⁴⁷ Appx. 51a-52a.

⁴⁸ Appx. 52a.

⁴⁹ Appx. 6a.

⁵⁰ Appx. 54a.

⁵¹ Appx. 8a, 275a-346a.

⁵² Appx. 54a.

⁵³ Appx. 295a.

⁵⁴ Appx. 55a.

⁵⁵ Appx. 55a.

⁵⁶ Appx. 9a.

⁵⁷ Appx. 9a.

⁵⁸ Appx. 393a.

⁵⁹ Appx. 395a.

⁶⁰ Appx. 395a.

⁶¹ Appx. 56a.

⁶² Appx. 60a.

⁶³ Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.,* 850 F.3d 526, 534 (3d Cir.

2017) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)). On a motion for summary judgment, "we view the facts and draw all reasonable inferences in the light most favorable to the nonmovant." *Pearson*, 850 F.3d at 533-34 (3d Cir. 2017) (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)). "The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their care for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Willis*, 808 F.3d at 643 (citing *Celotex Corp.*, 477 U.S. at 322-323). Mr. Satell *pro se* raises a wide variety of factual disputes in his Opposition and sur-reply which are not material to the questions of law under his right to due process and the timeliness of his discrimination claims. Rather, they address his position the University treated him unjustly and he is a qualified graduate student. He, of course, could be correct but this is not our limited province.

[64] *Johnson v. Temple University—of Commonwealth System of Higher Educ.*, No. 12-515, 2013 WL 5298484 at *7 (E.D. Pa. Sept. 19, 2013) (citing *Goss v. Lopez*, 419 U.S. 565, 576 (1975)).

[65] *Manning v. Temple University*, 157 Fed. Appx. 509, 515 (3d Cir. 2005) (quoting *Mauriello v. University of Medicine and Dentistry of New Jersey*, 781 F.2d 46, 51 (3d Cir. 1986)).

[66] *See Furey v. Temple University*, 730 F. Supp. 2d 380, 392 (E.D. Pa. 2010) (noting the Supreme Court in *Board of Curators of the University of Missouri v. Horowitz*, 435 U.S. 78 (1978) held because the "academic process is not adversarial, dismissals for academic reasons do not require a formal notice and hearing. It held that more stringent due process standards applied for decisions to dismiss or suspend a student for disciplinary reasons"); *see also Kadakia v. Rutgers*, 633 Fed. Appx. 83, 88 (3d Cir. 2015) (citing *Horowitz* holding "[w]hen a student is discharged for academic, as opposed to disciplinary, reasons, all that is required to satisfy procedural due process is "an informal faculty evaluation with the student").

[67] *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) (quoting *Zinerman v. Burch*, 494 U.S. 113, 126 (1990)).

[68] Appx. 55a.

[69] Appx. 56a, 212a.

[70] *See Manning*, 157 Fed. Appx. at 515 (quoting *Mauriello*, 781 F.2d at 51).

[71] *Alvin*, 227 F.3d at 116 (quoting *Zinerman*, 494 U.S. at 126).

[72] *Blunt v. Lower Merion Sch. Dist.*, 826 F. Supp. 2d 749, 758 (E.D. Pa. 2011), *aff'd*, 767 F.3d 247 (3d Cir. 2014) (citing, *e.g.*, *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir.2003)).

[73] *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 272 (3d Cir. 2014).

[74] *David v. Neumann University*, 187 F. Supp. 3d 554, 561 (E.D. Pa. 2016) (quoting *Southeastern Pennsylvania Transp. Authority v. Gilead Sciences, Inc.*, 102 F. Supp. 3d 688, 701 (E.D. Pa. 2015)).

[75] *See Webb v. Susquehanna Tp. School Dist.*, 93 F. Supp. 3d 343 (M.D. Pa. 2015) (citing *Knoll v. Springfield Twp. Sch. Dist.*, 763 F.2d 584, 585 (3d Cir. 1985)) (holding a civil rights action under federal law in Pennsylvania must be brought within Pennsylvania's two year statute of limitations for personal injury claims).

[76] Appx. 21a, 23a, 77a.

[77] Appx. 72a, 398a.

[78] Appx. 22a.

[79] Appx. 27a.

[80] Appx. 178a.

[81] Appx. 20a, 29a, 41a-42a.

[82] Appx. 20a.

[83] Appx. 34a, 43a.

[84] Appx. 212a.

[85] Appx. 7a.

[86] ECF Doc. No. 37.